IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| BRADLEY HALL, | : | |
| Plaintiff, | : | Civil No. 03-5153 (RBK) |
| v. | : | [Doc. #24] |
| JOHNSON & JOHNSON, et al., | : | |
| Defendants. | : | |
| ELAINE FANNON, | : | |
| Plaintiff, | : | Civil No. 04-930 (RBK) |
| v. | : | [Doc. #19] |
| JOHNSON & JOHNSON, et al., | : | |
| Defendants. | : | |
| JEFFREY BYRUM, | : | |
| Plaintiff, | : | Civil No. 04-1176 (RBK) |
| v. | : | [Doc. #25] |
| JOHNSON & JOHNSON, et al., | : | |
| Defendants. | : | |
| MARY E. SHREEVE, | : | |
| Plaintiff, | : | Civil No. 04-2220 (RBK) |
| v. | : | [Doc. #15] |
| JOHNSON & JOHNSON, et al., | : | |
| Defendants. | : | |

1

```
DONALD NOHNER,                       :

                    Plaintiff,       :   Civil No. 04-2706 (RBK)
        v.                           :   [Doc. #14]
JOHNSON & JOHNSON, et al.,           :
                    Defendants.
```

```
BOBBY L. TAYLOR,                     :

                    Plaintiff,       :   Civil No. 04-2707 (RBK)
        v.                           :   [Doc. #14]
JOHNSON & JOHNSON, et al.,           :
                    Defendants.
```

```
CHARLES SALISBURY,                   :

                    Plaintiff,       :   Civil No. 04-2708 (RBK)
        v.                           :   [Doc. #14]
JOHNSON & JOHNSON, et al.,           :
                    Defendants.
```

```
ELDON THOMPSON,                      :

                    Plaintiff,       :   Civil No. 04-3294 (RBK)
        v.                           :   [Doc. #14]
JOHNSON & JOHNSON, et al.,           :
                    Defendants.
```

```
LAURA CLARK,                         :

                    Plaintiff,       :   Civil No. 04-3349 (RBK)
        v.                           :   [Doc. #13]
JOHNSON & JOHNSON, et al.,           :
                    Defendants.
```

2

```
JOANNE PADGETT,                      :

                    Plaintiff,       :   Civil No. 05-537 (RBK)
        v.                           :    [Doc. #8]
JOHNSON & JOHNSON, et al.,           :

                    Defendants.
```

```
MARION BRASSARD,                     :

                    Plaintiff,       :   Civil No. 05-782 (RBK)
        v.                           :    [Doc. #8]
JOHNSON & JOHNSON, et al.,           :

                    Defendants.
```

```
VERNETTE BLISS,                      :

                    Plaintiff,       :   Civil No. 05-783 (RBK)
        v.                           :    [Doc. #7]
JOHNSON & JOHNSON, et al.,           :

                    Defendants.
```

```
DAVID KOLLASCH,                      :

                    Plaintiff,       :   Civil No. 05-784 (RBK)
        v.                           :    [Doc. #7]
JOHNSON & JOHNSON, et al.,           :

                    Defendants.
```

```
PATRICIA LAWTON,                     :

                    Plaintiff,       :   Civil No. 05-1199 (RBK)
        v.                           :    [Doc. #5]
JOHNSON & JOHNSON, et al.,           :

                    Defendants.
```

```
KATHLEEN STICKEL,                     :

                    Plaintiff,        :   Civil No. 05-1200 (RBK)
         v.                           :   [Doc. #5]
JOHNSON & JOHNSON, et al.,            :

                    Defendants.       :
```
```
JOYCE TRACKSLER,                      :

                    Plaintiff,        :   Civil No. 05-1356 (RBK)
         v.                           :   [Doc. #5]
JOHNSON & JOHNSON, et al.,            :

                    Defendants.       :
```
```
RICHARD THOMAS,                       :

                    Plaintiff,        :   Civil No. 05-1563 (RBK)
         v.                           :   [Doc. #3]
JOHNSON & JOHNSON, et al.,            :

                    Defendants.       :
```
```
DANNY R. SMITH,                       :

                    Plaintiff,        :   Civil No. 05-1564 (RBK)
         v.                           :   [Doc. #3]
JOHNSON & JOHNSON, et al.,            :

                    Defendants.       :
```

## OPINION

**APPEARANCES:**

Michael J. Ferrara, Jr., Esq.
The Ferrara Law Firm
601 Longwood Avenue
Cherry Hill, NJ 08002
     *Counsel for Plaintiff*

Susan M. Sharko, Esq.
Drinker, Biddle & Reath

500 Campus Drive
Florham Park, NJ 07932-1047
    *Counsel for Defendants*

**DONIO, MAGISTRATE JUDGE:**

This matter comes before the Court upon an identical motion in each of the above cases filed by each Plaintiff[1] seeking to compel Defendants to produce documents concerning other incidents involving products manufactured by Defendants. Specifically, each Plaintiff requests in his or her case that Defendants produce three categories of documents: (1) the caption of all cases brought against Defendants in the past ten years dealing with claims of defective knees or hips and the disposition of each case; (2) a summary of all claims made against Defendants in the past ten years concerning defective knees or hips where no lawsuit was filed, and the disposition of each claim; and (3) a summary of all notices received by Defendants from doctors concerning defective knees and hips that never became the subject of a lawsuit. In their reply brief, Plaintiffs limit their request and state that they do not seek data from Defendants' products that are not the subject of the pending litigation. <u>See</u> Plaintiffs Reply Brief (hereafter "Pl. Reply Br.") at 3. This Opinion shall be applicable to each of the above cases with the exception of <u>McMillan v. Johnson & Johnson, et al.</u>, Civil No. 04-1180 (RBK), which will be addressed by separate

---

1. Plaintiffs are individuals who have each filed separate actions against Defendants, Johnson & Johnson and DePuy Inc., and their cases have been consolidated for discovery purposes only. Plaintiffs' counsel has filed the present motion on behalf of each Plaintiff individually.

order.   The Court has considered the moving papers and the opposition thereto, and for the reasons set forth below and for good cause shown, the Court will grant in part and deny in part each motion.

## I.   Background

In each of these cases, the Plaintiff alleges that he or she suffered injuries after surgically implanted prosthetic polyethylene knees or hips, designed and manufactured by Defendants, deteriorated prematurely due to an allegedly defective sterilization process.  <u>See</u> Motion to Compel Defendants to Provide Data Concerning Other Similar Incidents (OSIs) (hereafter "Pl. Br.") at 13.  Specifically, Plaintiffs allege that despite notice of a defect, Defendants "continued to use gamma radiation in air" to sterilize the polyethylene from 1995 to 1998 for the Press-Fit Condylar knees.  <u>Id.</u> at 13.  Defendants contend that the sterilization process was state-of-the-art at the time that these artificial devices were manufactured and that the need to replace the prosthetic devices earlier than expected is related to a number of factors other than the sterilization process, such as the size and activity level of the patient and the knowledge and skill of the surgeon who performed the implantation surgery. <u>See</u> Defendants' Brief in Opposition to Plaintiffs' Motion to Compel Data Concerning Other Similar Incidents (OSIs) (hereafter "Def. Br.") at 4, 9.

In these motions, Plaintiffs seek a number of documents relating to other similar incidents (hereafter "OSIs") and assert

that such discovery is relevant to the issue of whether Defendants had notice of the defect in the devices yet continued to utilize the sterilization process. Pl. Br. at 13. They specifically request the names of other cases involving defective knees or hips that are currently pending or have been tried and/or settled, and they also seek notices received by Defendants from doctors or patients concerning defective knees or hips where no claim or lawsuit was filed. Id. at 12. Plaintiffs argue that they are entitled to this information because it is discoverable under Fed.R.Civ.P. 26(b)(1) as it may lead to admissible evidence on the issue of whether Defendants "had actual notice of the problem but did nothing to correct it." Id. at 13. Defendants argue that Plaintiffs' requests do not fall within the confines of Rule 26(b)(1) and are thus irrelevant because they "are not limited to the type of knee (or hip) prosthesis components utilized in each specific implantation surgery[,]" and because the requests are not "limited in scope to complaints/lawsuits/notices relating to sterilization methods of ultra-high molecular weight polyethylene ('UHMWPE') components, which forms the basis for their lawsuits." Def. Br. at 8-9. Defendants further contend that even if the discovery requested by Plaintiffs is relevant within the scope of Rule 26(b)(1), the request is still overbroad in that those complaints which reference UHMWPE may only refer to the components in an irrelevant manner, for example, by noting that the sterile package had been breached before implantation. Id. at 9. Moreover, Defendants assert that the requests are burdensome and

note that they have already produced a significant amount of discovery, including seven witnesses for deposition, responses to approximately 1,600 interrogatories and 4,250 requests for production, and more than 15,300 pages of documents. Id. at 1. To support their burdensome argument, Defendants have submitted an affidavit of Stephen J. Peoples, who currently serves as the Worldwide Vice-President of Clinical and Regulatory Affairs of DePuy Orthopaedics, Inc. and who has served as Vice-President of other divisions of DePuy since March of 1992, to delineate the procedure that would be necessary for Defendants to properly respond to Plaintiffs' discovery request. Defendants state that compliance with Plaintiffs' request would require Defendant DePuy to identify, retrieve and review hundreds of thousands of pages of documents at Defendants' expense. Id. at 5-6.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide the Court with broad authority to prevent discovery or to restrict its scope. See generally Fed.R.Civ.P. 26. As an initial matter, parties may only obtain discovery regarding matters that are "relevant to the claim or defense of any party" and are "not privileged." Fed.R.Civ.P. 26(b)(1). The Court may also permit "for good cause" discovery of matters that are "relevant to the subject matter involved in the action." Id. "The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." Caver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000)(citing Nestle

8

Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 105 (D.N.J. 1990)).  Relevancy is more liberally and broadly construed at the discovery stage than at trial.  Leksi v. Fed. Ins. Co., 129 F.R.D. 99, 104 (D.N.J. 1989).

Plaintiffs each allege in their individual complaints or amended complaints a count for design defect, and some complaints contain a count for punitive damages.  Plaintiffs allege, inter alia, that Defendants negligently designed and manufactured artificial knee or hip prostheses and that Defendants failed to withdraw such devices from the market once they knew or should have known that the devices were defective and the attendant risk of injury associated with each device.  See, e.g., Complaint in Richard Thomas v. Johnson & Johnson, Civil No. 05-1563 (RBK) at ¶ 9.  They also allege in some complaints that the acts and/or omissions of Defendants "were performed or omitted volitionally, with knowledge of the existence of a high probability of risk of injury to members of the public and demonstrated a wanton and willful disregard for the safety of the users of Defendants' [prosthesis.]"  See, e.g., Complaint in Jeffrey Byrum v. Johnson & Johnson and DuPuy, Inc., Civil No. 04-1176 (RBK) at ¶ 22.  Plaintiffs contend that OSIs will demonstrate that "[D]efendants had notice and that they knew or should have discovered the defect in the polyethylene knee implants from the complaints that were being filed" and that despite this notice that the implants were prematurely failing, Defendants "continued to use gamma radiation in air[.]"  See Pl. Br. at 13.

9

Plaintiffs rely on <u>Wolf v. Proctor & Gamble Co.</u>, 555 F. Supp. 613, 617 (D.N.J. 1982), to support their argument that other similar instances are discoverable in products liability actions. Pl. Br. at 14; Pl. Reply Br. at 3.  In <u>Wolf</u>, a products liability case where plaintiffs allegedly contracted Toxic Shock Syndrome ("TSS") as a result of using tampons manufactured and distributed by defendants in that case, the District Court addressed the admissibility of evidence of other occurrences involving the product at issue.  <u>Wolf</u>, 555 F. Supp. at 616, 20-21.  The Court noted that where such evidence is offered to prove product defect, negligence, or causation, a court may "require that the circumstances surrounding the other occurrences be substantially similar to those in the case at bar." <u>Wolf</u>, 555 F. Supp. at 621 (internal citations omitted).  Where the evidence is offered only to prove that the defendant had notice of the dangerous situation causing the plaintiff's injury, the similarity of circumstances requirement may be relaxed.  <u>Id.</u> (citing <u>Evans v. Pennsylvania Railroad Co.</u>, 255 F.2d 205, 210 (3d Cir. 1958)).[2]  Plaintiffs also rely on <u>C.A. Assoc. v. Dow Chemical Co.</u>, 918 F.2d 1485, 1486, 1489 (10th Cir. 1990), in which the Tenth Circuit affirmed the lower court's decision permitting evidence of other structures constructed with the alleged defective masonry additive at issue, including buildings that were older than the plaintiff's building

---

2.  Neither party addresses what state law governs the product liability actions; however, Plaintiffs rely on New Jersey law as well as cases from other jurisdictions to support their motions.

or were located in a different climate.  In so holding, the Court stated that "[b]oth federal and state courts routinely permit introduction of substantially similar acts or occurrences in product liability actions to demonstrate the existence of a defect, to prove notice, or to refute testimony given by defense witnesses[.]" C.A. Assoc., 918 F.2d at 1489.  See also Wheeler v. John Deere Co., 862 F.2d 1404, 1408 (10th Cir. 1988)(trial court properly admitted testimony of five victims who, like plaintiff, had a limb amputated because of tractor accidents, as such evidence was probative of existence of a defect and was not unduly prejudicial); Black v. M & W Gear Co., 269 F.3d 1220, 1226 (10th Cir. 2001)(trial court properly permitted plaintiff's expert testimony concerning report of other accidents even though plaintiff failed to demonstrate that such accidents were substantially similar to the incident involving plaintiff's decedent because, under circuit precedent, expert may present inadmissible evidence where such evidence underlies opinion and is otherwise inadmissible only because of reliability or relevance concerns); Lewy v. Remington Arms Co., Inc., 836 F.2d 1104, 1108 (8th Cir. 1988)(district court properly admitted other incidents involving same model firearm as that which caused plaintiff's injury because the evidence was relevant to whether defendant had notice of the defective design, which was relevant to plaintiff's failure to warn and punitive damages claims and plaintiff's causation theory); Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 508-09 (8th Cir. 1993)(although dissimilar accidents may be

11

admissible to impeach expert's testimony where expert has given "'vast and comprehensive testimony' as to safety of product involved," district court abused its discretion in permitting extensive evidence of other injuries on cross-examination because testimony of plaintiff's expert did not rise to requisite level); Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1072-73 (5th Cir. 1986)(trial court improperly limited "similar accidents" to those involving exact rim base and side ring that were mismatched in plaintiff's case rather than permitting instances in which other multi-piece parts were mismatched).

Defendants contend that none of the cases relied upon by Plaintiffs specifically address the admissibility of OSIs in the medical context. See Def. Br. at 11 n.1. Moreover, Defendants assert that Wolf does not support Plaintiffs' motions and that in Wolf the Court granted the defendants' motion to exclude evidence of non-TSS injuries, finding that the limited probative value given the lack of similarity of injuries was outweighed by concerns of prejudice, confusion of the issues, and delay.[3]   Id. at 9-10

---

3.   Defendants also argue that Plaintiffs' reliance on Schwartz v. Jordan, 337 N.J. Super. 550, 767 A.2d 1008 (App. Div. 2001), cert. denied, 168 N.J. 293, 773 A.2d 1157 (2001), is distinguishable. Schwartz involved a suit under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:4-1 et seq., against a township for an allegedly dangerous sidewalk.   Id. at 553; 767 A.2d at 1009.   The Court noted that evidence of other accidents may be admissible to prove that a public entity's action or failure to act was palpably unreasonable, a factor necessary to impose liability on a public entity under the Tort Claims Act.   Id. at 565-66; 767 A.2d at 1016-17.   Plaintiffs concede that these cases do not implicate the Tort Claims Act or the "palpably unreasonable" standard, but assert Schwartz provides supports for discovery of OSIs in personal injury cases.   See Pl. Reply Br. at 4.

(citing <u>Wolf</u>, 555 F. Supp. at 622).

Having reviewed the submissions of the parties, the Court concludes that Plaintiffs have met their burden of demonstrating that complaints made by others to Defendants concerning the alleged premature deterioration of the UHMWPE products at issue are relevant under Rule 26 standards to the product liability claims and defenses here, and specifically to the issues of notice or lack thereof.  As a number of cases cited by Plaintiffs hold that OSI evidence is relevant in product liability cases and may be admissible at trial, and as relevancy is more broadly construed at the discovery stage than for purposes of trial, <u>Leksi</u>, 129 F.R.D. at 104, the Court finds that prior claims made to Defendants that the prosthetic devices deteriorated prematurely are discoverable pursuant to Fed.R.Civ.P. 26(b)(1) in these cases.  In so finding, the Court rejects Defendants' argument that discovery should be precluded because identification of "substantially similar circumstances" is impossible given the peculiar characteristics of each surgery and each individual.  <u>See</u> Def. Br. at 9.  Rather, such an argument may  support limitation or preclusion of such evidence at trial but does not warrant outright preclusion of discovery. Moreover, in permitting the discovery, the Court is not in any way determining the admissibility of such evidence and either party may seek a ruling on such admissibility by way of <u>in limine</u> motion before the trial in accordance with the Court Rules and Scheduling Orders.

Moreover, Defendants' argument that Plaintiffs' requests are

not limited in scope to the sterilization methods of UHMWPE components, the devices that form the bases of Plaintiffs' complaints, does not support denial of Plaintiffs' motion. Id. at 9. As noted supra, Plaintiffs have conceded that they only seek data from Defendants' products that are the subject of this litigation. See Pl. Reply Br. at 3. Moreover, the Court will limit the requests to written complaints or written notices relating to premature deterioration of the particular UHMWPE device that is the subject of each Plaintiff's complaint. In so doing, the Court will not require that the claim be based on improper sterilization; rather, a claim of premature deterioration, the Court finds, is sufficiently relevant under Rule 26 at the discovery juncture. However, reports of OSIs received after the date of a particular Plaintiff's surgery are not likely to demonstrate that Defendants had notice of a defect at the time the prosthetic device for that specific Plaintiff was designed and manufactured. See Caruso v. Coleman Co., 157 F.R.D. 344, 347 (E.D. Pa. 1994)(in case arising from carbon monoxide poisoning of two campers, where plaintiffs alleged that defendant provided inadequate warnings on propane-fueled lantern and propane cylinders, court noted that "information after the accident at issue is not discoverable under the basis of notice[.]")(internal citations omitted). Consequently, the Court shall limit the relevant time period for production in each case as set forth below to exclude the time period after the Plaintiff's UHMWPE prosthesis surgery in each case.

14

Defendants' argument in opposition to the motion is also based upon the burden production of any OSIs will have upon Defendants.  Defendants acknowledge that they maintain complaint files on electronic databases on DePuy products from 1972 through the present.  Def. Br. at 5.  According to Defendants, the complaint files "are categorized according to the catalogue (or model) number of the prosthetic implant component referenced in the complaint." Id. at 4.  Defendants argue, however, that to conduct a search of all complaints involving UHMWPE, a number of electronic databases "would have to be manually reviewed in order to find complaint files regarding the catalogue numbers for UHMWPE components." Id. at 12.  Defendants further claim that due to multiple separate databases and information storage systems resulting from the merger of other companies into DePuy, there is no easy way to run database queries that would automatically generate a list of complaints. Id. at 5.  In his affidavit, Mr. Peoples estimates that an expert working solely on reviewing complaints would require two weeks to generate a list of potentially relevant complaint records, and two or three employees would then require an additional month to retrieve those records that are identified. See Affidavit of Stephen J. Peoples at ¶ 10. Mr. Peoples provided by way of example that for the year 2001, 3,067 complaint records were filed, which he translates to approximately 56,000 pages.  Id. at ¶ 9.  He further states that a senior employee familiar with DePuy complaints would have to review each page to determine which complaints contained references to

15

problems with UHMWPE.  <u>Id.</u>  With regard to the complaint files sought by Plaintiffs, Defendants contend that they have already produced Device History Records and redacted Medical Device Reports (MDRs) regarding each product identification number identified by a Plaintiff prior to the date of such Plaintiff's index surgery. Def. Br. at 4-5.  However, while asserting that some complaints result in the generation of MDRs, there has been no assertion that all complaints are included in MDRs.  Defendants also argue that the requests are burdensome because they will require a manual review of the complaint files to determine whether a particular complaint relates to the sterilization methods of UHMWPE components at issue here.  <u>Id.</u> at 12.

Under Rule 26, "relevancy of information must be balanced against the burdensome of production" of such discovery.  <u>Leksi</u>, 129 F.R.D. at 105.  In light of Mr. Peoples' affidavit describing the number of documents potentially responsive to Plaintiffs' request for a single year and the process to retrieve those documents, the Court shall initially limit in each case the relevant time period to one year prior to the Plaintiff's UHMWPE surgery that is the subject matter of the litigation.  The Court notes that due to the number of cases, this date range will include years 1993 through 1998 at this time; however, each case has been separately filed, and although consolidated for discovery purposes, when examined on an individual basis, the burdensome argument decreases.  In light of the relevancy of the requests to the notice issues under Rule 26, the Court finds that the temporal and scope

16

limitations imposed herein adequately address the burdensome objections raised by defendants. <u>See</u>, <u>e.g.</u>, <u>Fagan v. District of Columbia</u>, 136 F.R.D. 5, 7 (D.D.C. 1991)("The mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden.").

Defendants also argue that Plaintiffs merely desire to obtain this discovery to identify and solicit potential clients and that the reason that Plaintiffs seek the information is "to learn how much DePuy is paying in settlement as well as solicit participation in other cases." Def. Br. at 8. The Court notes that in their reply brief, Plaintiffs' assert that they do not seek patient or doctor names or other personal information. <u>See</u> Pl. Reply Br. at 4. Consequently, Defendants shall be entitled to redact such information at this time. Moreover, the Court at this time will not require the production of the disposition of any claims as there has been no showing that such information is relevant under Rule 26 standards to notice or other issues in this case.

In conclusion, the Court shall grant the motion to compel in part and shall deny the motion in part. An appropriate Order will be entered.

s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

Dated: July 21, 2005
cc: Hon. Robert B. Kugler

17